**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

ALBERT HERNANDEZ,

    Plaintiff,

    v.

TULARE COUNTY CORRECTION CENTER, *et al.*,

    Defendants.

Case No. 1:16-cv-00413-EPG (PC)

**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUR-REPLY; OVERRULING PLAINTIFF'S OBJECTIONS TO CORIZON'S REPLY; AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

(ECF Nos. 68, 85, 101, 111)

## I.     INTRODUCTION

Albert Hernandez ("Plaintiff") is a prisoner proceeding *pro se* in this civil rights action alleging general negligence, intentional infliction of emotional distress, failure to protect, failure to provide medical treatment in violation of the Eighth Amendment, failure to provide accommodation of a disability in violation of the Fourteenth Amendment, and invasion of privacy in violation of the Fourth Amendment against Tulare County Correction Center ("Tulare County" or the "County"), Sheriff Mike Boudreaux, and Corizon Health Services ("Corizon") (collectively, "Defendants"). On January 11, 2016, Plaintiff commenced this action in the Superior Court of the State of California for the County of Tulare. On March 25, 2016, Corizon removed the action to this court pursuant to 28 U.S.C. § 1441(a). (ECF No. 1).

On January 11, 2018, Sheriff Boudreaux and Tulare County (collectively, the "County Defendants") filed a motion for summary judgment.  (ECF No. 68). On April 9, 2018, Plaintiff filed his opposition to the County Defendants' motion for summary judgment. (ECF No. 95). On

April 11, 2018, the County Defendants filed their reply. (ECF No. 98). On April 18, 2018, Plaintiff filed a supplement to his opposition, (ECF No. 100), and on April 30, 2018, filed a motion for leave to file a sur-reply, (ECF No. 101).

On March 9, 2018, Corizon filed a motion for summary judgment. (ECF No. 85). On June 5, 2018, Plaintiff filed his opposition to Corizon's motion for summary judgment. (ECF No. 102). On June 26, 2018, Corizon filed its reply. (ECF No. 108). On July 12, 2018, Plaintiff filed objections to Corizon's reply. (ECF No. 111).

For the reasons set forth below, Plaintiff's motion for leave to file a sur-reply, (ECF No. 101), is denied, Plaintiff's objections to Corizon's reply, (ECF No. 111), is overruled, and Defendants' motions for summary judgment, (ECF Nos. 68, 85), are granted.

## II. SUMMARY OF PLAINTIFF'S CLAIMS

Plaintiff alleges that he was a pre-trial detainee in the custody of Tulare County Corrections. In preparation for transport to a court appearance, on April 21, 2015 at 4:30 am, jail officials conducted a body search and shackled his ankles. Jail officials then placed him in a holding cell. At 6:30 am, jail officials conducted another body search and transported him to court. When he arrived at the court, jail officials conducted another body search before he proceeded to the court appearance.

After the court appearance, Plaintiff was transported back to Tulare County Corrections. Jail officials were conducting body searches of processing and returning prisoners on a newly purchased x-ray scanning machine. Jail officials instructed him to remove his shoes and proceed to the scanning platform. Plaintiff told jail officials that he has chronic disabilities— a hip injury and diabetes. He asked them to remove the shackles from his ankles because it was difficult for him to step on two separated elevations in a standing position, but jail officials ignored him. Instead, jail officials ordered him to remove and pick up his shoes, and to follow orders. A fellow prisoner assisted by bending down to hand Plaintiff his shoes as his waist shackles "were almost not removed."

As he approached the scanning platform, Plaintiff stepped on the elevated plate and his ankle shackles caught and hung on the corner of the plate, causing him to trip and fall face first on

top of the elevated platform step. Plaintiff had no ability to stop the impact of the fall with his hands because they were in waist shackles. The fall caused injury and damages to Plaintiff's lip and the right side of his temple. There was a "¾ incision" that bled throughout the day. Plaintiff also suffered headaches, pain, and dental fracture, and has two loose front teeth that may require dental extraction and the use of dentures.

Plaintiff further alleges that jail officials failed to treat his medical needs, and one jail official, Deputy Hall, made numerous comments, including that Plaintiff should quit crying like a baby and that Plaintiff cried worse than her youngest child.

Plaintiff also alleges that the medical provider, Corizon Health Services, failed to provide him with immediate medical treatment, bandages, gauzes, or ointment. Corizon refused to provide him with medical attention, and instructed him to sit and wait for a nurse to provide him with a wheelchair to take him to the infirmary. Stephanie, a registered nurse, returned fifteen minutes later, but provided no means to be transported for treatment.

Plaintiff alleges that defendants failed to protect him from injury and harm, failed to treat his medical needs in violation of the Eighth Amendment, ignored his request for disability accommodation thereby exposing him to unreasonable risk in violation of the Fourteenth Amendment, limited his expectation of privacy in his body during cavity searches without legitimate penological purpose, and intentionally inflicted emotional distress. Lastly, Plaintiff states that he singled out Sheriff Boudreaux as a defendant because Boudreaux sets policies, operations, and training of all Tulare County jail staff and officials.

## III.    PROCEDURAL MOTIONS

### A.    Motion for Leave to File Sur-Reply

Plaintiff's motion for leave to file a sur-reply to the County Defendant's reply is denied. (ECF No. 101). Neither the Local Rules nor the Federal Rules of Civil Procedure authorizes the filing of a sur-reply. *Hill v. England*, 2005 WL 3031136, *1 (E.D. Cal. Nov. 8, 2005). However, a district court may in its discretion allow a sur-reply "where a valid reason for such additional briefing exists." *Id.* Plaintiff states that he is requesting to file a sur-reply because the County Defendants "attempt[] to confuse the court and continue[] to deny that the plaintiff did not suffer

any disability while in the custody of Tulare County Corrections Center, where such plaintiff[] contentions are based on personal knowledge and set forth facts, that would be admissible in evidence, and w[h]ere the plaintiff attested under penalty of perjury that the contents of the motion and pleadings are true and correct." (ECF No. 101 at 1). Plaintiff, in effect, wants the last word on the County Defendants' motion for summary judgment. This is not a valid reason for such additional briefing. Plaintiff has had ample opportunity to submit evidence supporting his contentions and rebutting the County Defendants' arguments. Plaintiff has submitted over one hundred pages of arguments and evidence in opposition to the motion for summary judgment as well as a supplement to his opposition. The motion is now more than fully briefed. Accordingly, Plaintiff's motion for leave to file a sur-reply is denied.

### B. Objections to Corizon's Reply

Plaintiff also objects to Corizon's reply on its motion for summary judgment, (ECF No. 108). In its reply, Corizon objects to the medical opinions proffered by both "Plaintiff and his fellow inmate[]" witnesses in their declarations. (ECF No. 108 at 1 n. 1). Corizon argues that the declarations fail to show the declarants are competent to testify as required by Federal Rule of Civil Procedure 56(c)(4) or qualified to offer admissible opinion under Federal Rules of Evidence 701 and 702. Plaintiff opposes Corizon's objections and characterization of the witnesses, and argues that his witnesses should not be labeled "inmates" as doing so would cause unfair prejudice. (ECF No. 111 at 2). Plaintiff goes on to make substantive arguments in opposition to the motion for summary judgment. *Id.* at 3-21.

It appears that Plaintiff's argument is premised on a misunderstanding. Corizon does not argue that portions of the declarations offered by Plaintiff should be disregarded because the declarants are inmates, but rather because the declarants are not medical professionals. (ECF No. 108 at 1 n. 1). A trial court can only consider admissible evidence in ruling on a motion for summary judgment. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). "Affidavits submitted in support of or in opposition to a summary judgment motion must be 'made on personal knowledge, ... set forth such facts as would be admissible in evidence, and ... show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Bieghler v.*

1   *Kleppe*, 633 F.2d 531, 533 (9th Cir. 1980) (quoting Fed. R. Civ. P. 56(e)).

2        Pursuant to Fed. R. Evid. 702, a witness qualified as an expert may testify in the form of

3   an opinion about issues as to which their expertise may assist the trier of fact. A witness may

4   qualify as an expert if he or she has obtained expertise on a subject through "knowledge, skill,

5   experience, training, or education." Fed. R. Evid. 702. Lay witnesses, however, may not testify

6   based on scientific, technical, or other specialized knowledge within the scope of Rule 702, and

7   may testify only as to matter of which they have personal knowledge. Fed. R. Evid. 701 ("If a

8   witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

9   (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's

10  testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other

11  specialized knowledge within the scope of Rule 702.").

12       Here, Plaintiff's declarants are lay witnesses who appear to opine on matters outside of

13  their expertise. For example, declarant Ricardo Rocha asserts, "I do state that Albert Hernandez

14  incision required possible [sic] 2 to 3 stitches from blood loss in first two days." (ECF No. 102 at

15  70). Mr. Rocha does not state that he is a medical professional or that he otherwise possesses

16  specialized knowledge, skill, experience, training, or education in the medical field. *Id.* at 69-70.

17  Therefore, he is unqualified to offer expert opinion as to what medical treatment Plaintiff should

18  have received. *See* Fed. R. Evid. 701, 702. Accordingly, Corizon's objections are sustained, and

19  Plaintiff's objections are overruled. The Court will disregard any testimony by any declarant that

20  does not comport with the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

21  **IV.    SUMMARY JUDGMENT MOTIONS**

22       **A.  Legal Standard**

23       Summary judgment in favor of a party is appropriate when there "is no genuine dispute as

24  to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

25  56(a); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If there is a genuine

26  dispute about material facts, summary judgment will not be granted."). A party asserting that a

27  fact cannot be disputed must support the assertion by "citing to particular parts of materials in the

28  record, including depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. "[C]onclusory allegations unsupported by factual data" are not enough to rebut a summary judgment motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981)).

In judging the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record… from which a reasonable inference… may be drawn…"; the court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). Additionally, the evidence of the non-movant is to be believed. *Anderson*, 477 U.S. at 255. Moreover, the Court must liberally construe Plaintiff's filings because he is a prisoner proceeding *pro se* in this action. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

In reviewing a summary judgment motion, the Court may consider other materials in the

record not cited to by the parties, but is not required to do so.  Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

### B. Analysis[1]

#### i. *Fourth Amendment Violation of Limited Expectation of Privacy*

Plaintiff alleges that the County, Corizon, and Boudreaux[2] violated his Fourth Amendment "limited expectation of privacy" in his body by analyzing his body cavities using a full-body scanner without a legitimate penological interest.

The County Defendants do not dispute that they subjected Plaintiff to a body cavity search using a full-body scanner. Rather, they argue that the search was performed to further a legitimate security interest, and did not amount to a violation of Plaintiff's constitutional rights. The disagreement, therefore, is not a dispute of fact, but rather a question of law.

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches. "This right extends to incarcerated prisoners; however, the reasonableness of a particular search is determined by reference to the prison context." *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir.1988). In *Bell* v. *Wolfish*, 441 U.S. 520 (1979), the Supreme Court set forth a balancing test to analyze whether searches of detainees violate the Fourth Amendment. In that case, pretrial detainees at a federal correctional facility argued that a policy requiring them to expose their body cavities for visual inspection as part of a strip search conducted after every contact visit with a person from outside the institution violated their Fourth Amendment rights. *Id.*at 558. The visual inspection required male prisoners to lift their genitals and spread their buttocks, and female prisoners to expose their vaginal and anal cavities. *Id.*at 558 n.39. Jail officials did not touch the prisoners during the visual inspection. *Id.* "Corrections officials testified that visual cavity searches were necessary not only to discover but also to deter the

---

[1] Throughout his oppositions, Plaintiff attempts to augment his claims by arguing that Defendants acted in retaliation for his filing a complaint and failed to grant him equal protection in violation of his constitutional rights. (ECF No. 95 at 10). Plaintiff did not allege any such claims in the operative complaint, and cannot amend his claims to defeat summary judgment. Therefore, the Court will not analyze these arguments.

[2] Plaintiff appears to be suing Sheriff Boudreaux in his official capacity, as opposed to in his individual capacity, as Plaintiff concedes that Sheriff Boudreaux did not personally participate in any of the events alleged in this action, and is sued only because he is Sheriff of Tulare County. (ECF No. 1-1 at 7). The Court will thus analyze the claims against Sheriff Boudreaux as claims against an entity, *i.e.* Tulare County Sheriff Department.

smuggling of weapons, drugs, and other contraband into the institution." *Id.* "Balancing the significant and legitimate security interests of the institution against the privacy interests of the prisoners," the Court held that the visual body cavity searches were reasonable, and did not violate the Fourth Amendment. *Id.* at 558-560.  The Court explained:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence. And prisoner attempts to secrete these items into the facility by concealing them in body cavities are documented in this record [] and in other cases.

*Id.* at 559 (internal citations omitted).

The visual inspection in the present case is substantially less intrusive than the visual inspection found reasonable under the Fourth Amendment in *Bell*. Here, jail officials attempted to subject Plaintiff to a visual inspection upon his return from outside of the jail facility. (ECF Nos. 1-1 at 6; 68-6 at 2). The visual inspection was to be conducted using an x-ray full-body scanner. *Id.* The x-ray search was minimally intrusive in both manner and scope. Plaintiff was fully clothed. (ECF Nos. 1-1 at 6; 68-6 at 2). Jail officials did not instruct him to expose his genitals or buttocks. *Id.* And, jail officials did not touch him. *Id.* The visual inspection involved only the viewing of an x-ray image of Plaintiff's form—a screening procedure comparable to those regularly conducted by the Transportation Security Administration on passengers boarding an airplane. (ECF No. 98 at 1-3).

The County Defendants maintain that the purpose of the routine visual inspection is to ensure that prisoners do not bring weapons or other contraband into the jail facility. (ECF Nos. 68-6 at 2). As the Court held in *Bell*, the need of jail officials to discover and to deter the smuggling of weapons, drugs, and other contraband into a jail facility is a significant and legitimate security interest. Thus, in balancing this legitimate security interest against the minimal invasion of personal rights that the search entails, the Court concludes that the x-ray search is reasonable under the Fourth Amendment. Thus, the County Defendants are entitled to judgment

as a matter of law.

Additionally, Corizon argues that it is entitled to summary judgment on Plaintiff's invasion of privacy, failure to protect, and failure to accommodate a disability claims because they do not relate to any conduct by Corizon or a Corizon employee. (ECF No. 94 at 12). There are no factual allegations in the operative complaint to state a claim for liability on the part of Corizon or a Corizon employee regarding these claims. (ECF No. 1-1). The record is also devoid of any evidence that would support a finding of liability against Corizon or a Corizon employee regarding these claims. Accordingly, Corizon is entitled to judgment as a matter of law on Plaintiff's claims of invasion of privacy, failure to protect, and failure to accommodate a disability.

### ii. Violation of the Fourteenth Amendment

"Prisoners who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016), *cert. denied sub nom. Los Angeles Cty., Cal. v. Castro*, 137 S. Ct. 831, (2017). Plaintiff alleges that his injuries resulted while he was a pre-trial detainee in the custody of the County Defendants. Thus, the Court must analyze his claims under the Fourteenth Amendment.

A county or other local governmental entity may be liable for a constitutional deprivation where the plaintiff can "satisfy the requirements for municipality liability established by *Monell* and its progeny." *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1247 (9th Cir. 2016) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978)). Under *Monell*, an entity defendant cannot be held liable for a constitutional violation solely because it employs a tortfeasor. 436 U.S. at 691. An entity defendant can only be held liable for injuries caused by the execution of its policy or custom or by those whose edicts or acts may fairly be said to represent official policy. *Id.* at 694. A "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fogel v. Collins*, 531 F.3d 824, 834 (9th

Cir. 2008). "In addition, a local governmental entity may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)).

In *Castro*, the Ninth Circuit articulated the elements of a pretrial detainee's Fourteenth Amendment claim against an entity. 833 F.3d at 1073-74. The court upholding a lower courts' jury instructions on such a claim, concluded that to prevail on a claim against an entity defendant, a prisoner plaintiff must establish each of the following elements: (1) the prisoner plaintiff was deprived of a constitutional right; (2) the entity defendant had a longstanding practice or custom; (3) the entity defendant's longstanding practice or custom was unconstitutional in that it was deliberately indifferent to a substantial risk of serious harm to prisoners; and (4) the entity defendant's longstanding practice or custom was the moving force behind the harm to the prisoner plaintiff. *Id.* at 1073

*1. Failure to Protect Claim*

Plaintiff alleges that the County Defendants failed to protect him from injury and harm. In the operative complaint, Plaintiff states that a jail officials' direction to get on the full-body scanner platform while wearing ankle shackles caused his injury. (ECF No. 1-1 at 16). In his opposition to the instant motions, Plaintiff contends that the full-body scanner was unsafe because it did not have a handrail. (ECF No. 95 at 20).

The County Defendants contend that Plaintiff cannot show that they knew of and disregarded an excessive risk to his health or safety. (ECF No. 68-1 at 6). They argue that a single trip and fall incident fails to come close to a condition that poses a substantial risk of serious harm to prisoners. They also argue the full-body scanner was not missing its handrail at the time of the incident. *Id.* at 6.

Initially, the County Defendants offer evidence in the form of photographs and a declaration that the full-body scanner was equipped with a handrail at the time of the incident. (ECF No. 68-5 at 2; 68-7 at 1-4). The photographs were not taken at the time of the incident, however. (ECF No. 68-4 at 1-2). In opposition, Plaintiff offers evidence in the form of a

declaration that the scanner was not equipped with a handrail at the time of the incident. (ECF No. 102 at 61). This would appear to create a dispute of fact; however, whether the scanner was equipped with a handrail is not a material issue. Plaintiff does not allege that he fell because the full-body scanner was missing a handrail. He alleges that he fell because the chains of his ankle shackles caught on a step of the full-body scanner. (ECF No. 1-1 at 6). Plaintiff further alleges that he was unable to use his hands to stop the impact of his fall because his hands were in waist shackles. (ECF No. 1-1 at 6). Thus, the absence or presence of a handrail is an immaterial dispute, insufficient to defeat summary judgment.

Plaintiff also alleges that being instructed to step on the scanning platform while wearing ankle shackles placed him at risk for suffering harm. (ECF No. 1-1 at 16). The full-body scanner employed by the County Defendants is a SecurPass Body Scanner. (ECF No. 68-6 at 2). There are two steps, each approximately three (3) inches tall, that prisoners must clear while stepping onto the SecurPass Body Scanner platform. *Id.* The County Defendants concede that it is their policy and practice to process prisoners returning from court through a body-scan machine, and that the prisoners must wear shackles. (ECF No. 68-6 at 2). The remaining inquiry then is whether the County Defendants were deliberately indifferent to a substantial risk of serious harm to prisoners in employing such a policy.

"The deliberate indifference standard for municipalities is always an objective inquiry." *Castro*, 833 F.3d at 1074. "This *Castro* objective standard is satisfied when "a § 1983 plaintiff can establish that the facts available to [] policymakers put them on actual or constructive notice that the particular omission [or act] is substantially certain to result in the violation of the constitutional rights of their citizens." *Mendiola–Martinez*, 836 F.3d at 1248–49 (quoting *Castro*, 833 F.3d at 1076 and *City of Canton v. Harris*, 489 U.S. 378, 396 (1989) (O'Connor, J., concurring in part and dissenting in part)) (emphasis omitted).

The record is devoid of any evidence that Defendants were on notice—either actual or constructive—that prisoners would trip and fall when ascending the steps of the full-body scanner while wearing ankle shackles. In fact, the County Defendants contend that Plaintiff himself was able to clear the three-inch tall steps on two occasions prior to the incident while wearing ankle

shackles. (ECF No. 98 at 3). The County Defendants tender two x-ray images of Plaintiff taken on March 24, 2015 and April 9, 2015. (ECF No. 98-1 at 2-3). The images show Plaintiff standing on the scanner platform with both his hands and ankles in shackles. *Id.*

Plaintiff argues, contrary to the photographic evidence, that his shackles were removed on March 24, 2015 and April 9, 2015. Plaintiff neither argues that the photographic evidence is inauthentic nor offers any evidence in support of his contention that his shackles were removed. Plaintiff only offers his bare assertion, which is insufficient to withstand summary judgment. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (stating that courts need not find a "genuine issue" where the only evidence presented is "uncorroborated and self-serving" testimony); *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 587 (1985) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

Moreover, any risk of serious harm to Plaintiff was not substantial. Plaintiff tripped, accidentally. In the operative complaint, Plaintiff states, "As I approach [sic] steel platform to step on elevated plate, ankle chain caught and hung on corner [of] steel plate, causing me to trip . . . ." Tripping, accidentally, does not constitute a *substantial risk* of harm to form the predicate of a constitutional violation. *See Kingsley v. Hendrickson,* 135 S.Ct. 2466, 2472 (2015) (stating that a pretrial detainee cannot prevail on a claim alleging that an accident caused him harm); *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").

Thus, the County Defendants have met their ultimate burden of persuasion and are entitled to judgment a matter of law.

### 2. *Failure to Provide Medical Care*

Plaintiff alleges that Defendants delayed and denied him medical care.

The County Defendants contend that Plaintiff cannot succeed on his claim for inadequate medical care. (ECF No. 68-1 at 16-17). They argue that Plaintiff has conceded that he received prompt medical care by acknowledging in a court filing, "Corizon Health Services Employees

who provide Health Services for Tulare County Correction Facility were called from infirmity [sic], R.N. Stephanie and observed wound on lower lip, that was bleeding with a 3/4" gash." (ECF No. 12 at 5). Likewise, Corizon contends that Plaintiff sustained minor injuries and was given appropriate care by a registered nurse and a dental nurse. (ECF No. 94 at 15).

In *Gordon v. Cty. of Orange*, the Ninth Circuit extended the objective deliberate indifference standard articulated in *Castro* to inadequate medical care claims by pretrial detainees against municipalities. 888 F.3d 1118 (9th Cir. 2018). Again, the "*Castro* objective standard is satisfied when 'a § 1983 plaintiff can establish that the facts available to [] policymakers put them on actual or constructive notice that the particular omission [or act] is substantially certain to result in the violation of the constitutional rights of their citizens.'" *Mendiola–Martinez*, 836 F.3d at 1248–49 (quoting *Castro*, 833 F.3d at 1076 and *Harris*, 489 U.S. at 396).

Plaintiff does not allege that either the County Defendants or Corizon employ a policy or custom of denying prisoners adequate medical care. Furthermore, the record is devoid of any evidence that either the County Defendants or Corizon employed such a policy. For this reason alone, Defendants are entitled to summary judgment on this Fourteenth Amendment claim. *See e.g. Taplin v. Multnomah Cty. Health Servs.*, No. 3:15-CV-01937-AA, 2017 WL 4369483, at *5 n. 3 (D. Or. Sept. 29, 2017), *aff'd*, 735 F. App'x 404 (9th Cir. 2018) (awarding summary judgment to Sheriff's Office and medical service provider where a pretrial detainee did not identify a policy, practice, or custom to support municipal liability on his inadequate medical care claims); *Okpoti v. Las Vegas Metro. Police Dep't*, No. 5CV00110APGCWH, 2017 WL 773871, at *4 (D. Nev. Feb. 27, 2017), *aff'd sub nom. Okpoti v. Las Vegas Metro. Police Dep't on behalf of Nevada*, 712 F. App'x 671 (9th Cir. 2018) (awarding summary judgment where a pretrial detainee failed to "present[] evidence showing a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." (quotation marks omitted)).

Nevertheless, even if Plaintiff did allege that Defendants implemented a policy or custom that instructed or otherwise caused correctional and/or medical personnel to deny him sufficient medical care, Defendants would still be entitled to judgment as a matter of law. The record establishes that Defendants did, in fact, provide adequate medical care.

The County Defendants offer evidence that they provided Plaintiff with prompt medical attention. (ECF No. 68-12 at 1-5). Plaintiff does not refute this evidence; instead, he corroborates it. According to Plaintiff's evidence, upon his fall, a jail official immediately removed the shackles around his waist and ankles so that he could apply pressure with his t-shirt to his bleeding lip. (ECF No. 102 at 61). A jail official then left the room to summon a Corizon medical employee. *Id.* at 61, 77. A registered nurse arrived and observed Plaintiff's injuries. *Id.* at 12-13, 61, 77. She instructed him to sit while she retrieved a wheelchair. (ECF Nos. 1-1 at16-17; 102 at 12-13, 61, 77). The nurse returned after ten or fifteen minutes with an aspirin and gauze for self-treatment to stop the bleeding, accompanied by a dental nurse. (ECF Nos. 1-1 at 17; 102 at 13, 61, 75, 80-81). The dental nurse asked Plaintiff to open his mouth, observed his teeth, and indicated that he was clear. (ECF No. 102 at 14, 54, 75). The registered nurse gave him an ice pack, demonstrated how to use it, and instructed him to apply it to the wound area when the bleeding stopped. (ECF No. 102 at 49). The registered nurse then gave Plaintiff a half-dozen gauzes and cleared him to return to his cell. (ECF No. 102 at 13, 81).

When Plaintiff returned to his cell, he informed a jail official that his lip was still bleeding, and she instructed him to hold the gauze on his wound to allow the blood to dry and clot. (ECF No. 102 at 66, 81). Later that day, Plaintiff was given more gauze and instructed to hold it against his wound. (ECF No. 102 at 75). At approximately 11:30 p.m. on April 21, 2015, another member of the medical staff ordered that Plaintiff receive ointment, bandages, and Ibuprofen, which he received at 4:00 a.m. on April 22, 2015. (ECF No. 102 at 16, 81). On April 30, 2015, Plaintiff received a tetanus shot. (ECF No. 102 at 17). On May 5, 2015, he was transported to the infirmary to be seen by medical staff, Michael Roper, FNP-C, for complaints arising from the accident. (ECF No. 102 at 67).

The evidence, therefore, establishes that the County Defendants did not make a deliberate choice to disregard Plaintiff's need for medical care. The County Defendants were cognizant of Plaintiff's need for medical attention, and contacted a medical professional who undertook to provide Plaintiff with medical care. Thus, the County Defendants have met their ultimate burden of persuasion and are entitled to judgment as a matter of law.

Corizon is also entitled to judgment as a matter of law. Plaintiff's claim against Corizon is essentially that the responding registered nurse, identified as Stephanie Willett, and dental nurse should have provided him more medical care. Plaintiff states that he was not provided ointment, bandages, or gauzes, he did not receive stitches, he was not evaluated for a concussion, and he continued to bleed throughout the day to the following morning. (ECF No 1-1 at 17).

To establish a claim for violation of constitutional right to adequate medical care under the Fourteenth Amendment, a plaintiff must demonstrate "more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* "'[M]ere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Gordon*, 888 F.3d at 1125 (quoting *Castro*, 833 F.3d at 1071). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A "plaintiff must show that the course of treatment the [medical professional] chose was medically unacceptable under the circumstances." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Corizon's evidence establishes that they met the standard of care. Mrs. Willett states in her declaration that when she encountered Plaintiff, she observed blood from cuts on his mouth and chin. (ECF No. 94-2 at 3). He reported that he had a headache, but did not report that he had lost consciousness from the fall. *Id.* He did not report and did not exhibit any symptoms or signs of a potentially serious head injury. *Id.* She gave Plaintiff an ice pack and ibuprofen. *Id.* And, she confirmed that Plaintiff should notify staff if his symptoms changed or worsened. *Id.* She anticipated that when the bleeding stopped and the swelling reduced Plaintiff might be given antibiotic ointment and bandages, but these interventions were not yet required. *Id.* at 8.

On May 5, 2015, Plaintiff was seen by Mr. Roper. (ECF No. 94-4 at 5). Plaintiff did not report any injuries or signs of any abnormalities related to the fall. *Id.* On May 26, 2015, and May 29, 2015, Plaintiff complained of a headache. *Id.* at 7. On June 2, 2015, he was seen by a nurse. *Id.* His vital signs were reported normal, and he was given ibuprofen. *Id.* On June 25, 2015, and June 27, 2015, Plaintiff again complained of headaches. *Id.* at 8. On July 8, 2015, he was again seen by Mr. Roper, and had a headache and excessive ear wax in his left ear. *Id.* He was

prescribed Excedrin for migraine and ear drops. *Id.* at 9.

Plaintiff does not dispute that he received this treatment. However, he maintains that Mrs. Willet did not act appropriately within the standard of care for a registered nurse. Plaintiff states that he did not receive the assessment, treatment, and analysis that he was entitled to because his vitals were not checked, he was not transported in a wheelchair, he was not evaluated for a concussion, he did not observe an emergency response bag, and he was not treated for left knee injury. (ECF No. 102 at 52). However, Plaintiff fails to tender specific facts in the form of competent and admissible evidence in support of his contention that his specific requests were medically necessary or that the treatment he received was objectively unreasonable and was medically unacceptable under the circumstances.[3] *See* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11; *Strong v. France*, 474 F.2d 747, 749 (9th Cir. 1973). Thus, Corizon has met its ultimate burden of persuasion and is entitled to judgment as a matter of law.

### iii.  Failure to Accommodate Disability

Plaintiff alleges that he told jail officials of his disabilities—moderate osteoarthritis of the left hip and diabetes—but they ignored his request for a disability accommodation thereby exposing him to an unreasonable risk of harm. (ECF Nos. 1-1 at 7; 95 at 36).

The County Defendants do not dispute that they denied Plaintiff's request for accommodation. They contend that they were unaware of any disability access issues as Plaintiff failed to disclose any such issues in his intake records. (ECF No. 68-1 at 8).

Plaintiff's claims sound in Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA"). The ADA and RA requires public entities to make reasonable accommodation to disabled individuals. *Pierce v. Cty. of Orange*, 526 F.3d 1190, 1215 (9th Cir. 2008). This requirement applies to state and county prisons. *Pa. Dep't of Corr. v. Yeskey*,

---

[3] Plaintiff offers as evidence the declarations of Frank Jesus Guillen, Ramiro Rodriquez, and Ricardo Rocha, all of whom state that Plaintiff was entitled to additional medical care. *See e.g.* Declaration of Ramiro Rodriquez, ECF No. 102 at 65 ("Delaying and denying Hernandez medical care that was due process and needed for wound that I personaly [sic] believe needed a few stitches."); Declaration of Ricardo Rocha, ECF No. 102 at 69 ("I do state that Albert Hernandez incision required possible [sic] 2 to 3 stitches from blood loss in first two days."). None of the declarants, however, state that they have knowledge, skill, experience, training, or education in the medical field sufficient to qualify them as an expert under Fed. R. Evid. 702. Accordingly, their opinion as to what treatment Plaintiff should have received is not admissible.

524 U.S. 206, 210 (1998); *Lee*, 250 F.3d at 691. However, "[b]efore a public entity can be required under the ADA to provide a disabled individual an auxiliary aid or service, a public entity must have knowledge of the individual's disability and the individual's need for an accommodation." *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1196 (9th Cir. 2007). "[T]he entity must [] have knowledge that an individual requires an accommodation of some kind to participate in or receive the benefits of its services." *Id.* at 1197. The entity must have knowledge of the limitations caused by an individual's disability to take reasonable measures to accommodate the limitations. *Id.* "[A] public entity is on notice that an individual needs an accommodation when it knows that an individual requires one, either because that need is obvious or because the individual requests an accommodation." *Id.* at 1197-98.

Here, Plaintiff does not dispute that he failed to request a disability accommodation prior to the incident at issue. Rather, Plaintiff argues that his need for an accommodation was obvious. Plaintiff maintains that he had a recognized disability as he has a "chrono" for lower bunk assignment and has been denied work assignments due to his disabilities. (ECF No. 95 at 9, 13). Plaintiff also contends that Defendants should have consulted with his physician, and should have known of his disabilities because they had transported him to numerous out-patient medical appointments. *Id.* Based on these tacit indicia, Plaintiff argues, jail officials should have removed his ankle shackles before directing him to attempt to climb two three-inch tall steps.

Defendants offer photographic evidence that Plaintiff was able to clear the three-inch tall steps on two other occasions—one of which was less than two weeks prior—without the need for an accommodation. (ECF No. 98-1 at 2-3). It stands to reason that Plaintiff's limitation and specific need for accommodation could not have been obvious if he was able to successfully complete the same effort for which he sought accommodation without apparent limitation just two weeks before. Plaintiff does not refute this evidence. Thus, Plaintiff's need for an accommodation was not actually known or obvious, and Defendants are entitled to judgment as a matter of law.

### iv.  State Law Claims

#### 1.  Intentional Infliction of Emotional Distress

"The elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendants with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Sanders v. City of Fresno*, 551 F.Supp.2d 1149, 1179-80 (E.D. Cal. 2008) (citing *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795 (Cal. 1993)). Extreme and outrageous conduct is that which is "so extreme as to exceed all bounds of that usually tolerated in a civilized community," *Potter*, 6 Cal.4th at 1001, and "of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Christensen v. Super. Ct*, 54 Cal.3d 868, 905 (1991) (emphasis in original). The defendant's conduct must be "'intended to inflict injury or engaged in with the realization that injury will result.'" *Potter*, 863 P.2d at 819. "Liability for intentional infliction of emotional distress 'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Hughes v. Pair*, 209 P.3d 963, 976 (Cal. 2009) (quoting Rest.2d Torts, § 46, com. d.).

An employer may be held vicariously liable for the torts of its employees committed within the scope of the employment, including an employee's willful, malicious and even criminal torts. *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 907 P.2d 358, 360–61 (Cal. 1995). However, an intentional tort gives rise to respondeat superior liability only if the resulting injuries "'as a practical matter are sure to occur in the conduct of the employer's enterprise.'" *Id.* at 362 (quoting *Hinman v. Westinghouse Elec. Co.*, 471 P.2d 988, 990 (Cal. 1970)).

Plaintiff's intentional tort claim as described in the operative complaint is as follows: "Intentional Infliction of Emotional Distress! By Defendants!" (ECF No. 1-1 at 7). The County Defendants contend that Plaintiff fails to set forth factual allegations that any defendant acted with extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, him emotional distress. (ECF No. 68-1 at 24). In his opposition, Plaintiff fails to identify any conduct by any defendant that has caused him emotional distress. Instead, he states, "Plaintiff corrects the error, claim of infliction of emotional distress and general negligence caused by the defendants' action," and requests leave to amend the operative complaint. (ECF

18

No. 95 at 24). The County Defendants, in turn, argue that Plaintiff's intentional tort and negligence claims should be dismissed as error. (ECF No. 98 at 5).

The Court does not interpret Plaintiff's statement as a request to voluntarily dismiss his intentional tort claim, but rather a request to amend it. Nevertheless, the Court declines to grant leave to amend at this late stage of litigation due to the prejudice to the opposing parties. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (identifying several factors a court may consider in deciding whether to grant leave to amend a complaint under Fed. R. Civ. P. 15: (1) whether the plaintiff has previously amended his compliant, (2) undue delay, (3) bad faith, (4) futility of amendment, and (5) prejudice to the opposing party); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight"); *Peterson v. California*, 1:10–CV–01132–SMS, 2011 WL 3875622 (E.D. Cal. Sept. 1, 2011) ("Prejudice and undue delay are inherent in an amendment asserted after the close of discovery and after dispositive motions have been filed, briefed, and decided.") (quoting *Campbell v. Emory Clinic*, 166 F. 3d 1157, 1162 (11th Cir. 1999)).

In any event, a fair-minded jury would not be able to reasonably find for Plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The operative complaint does not reveal any *intentionally* extreme and outrageous conduct by any defendant or employee of a defendant. The only conduct that approaches intentional conduct is Deputy Hall's comments that Plaintiff should quit crying like a baby and cried worse than her youngest child. This conduct, however, fails to approach extreme and outrageous. Deputy Hall's conduct amounts to mere insults or annoyances. *See Hughes*, 209 P.3d at 976. Thus, Defendants are entitled to judgment as a matter of law.

### 2. Negligence

"In order to establish negligence under California law, a plaintiff must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003). A nurse breaches her duty if she "fails to meet the standard of care—that is, fails to use the level of skill, knowledge, and care that a reasonably careful nurse

would use in similar circumstances." *Massey v. Mercy Med. Ctr. Redding*, 180 Cal. App. 4th 690, 694 (2009). "The standard of care against which the acts of a medical practitioner [including a nurse] are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action and can only be proved by their testimony, unless the conduct required by the particular circumstances is within the common knowledge of laymen." *Id.* (quoting *Alef v. Alta Bates Hospital*, 5 Cal.App.4th 208, 215(1992)). "In other words, expert opinion testimony is required to prove that a defendant nurse did not meet the standard of care and therefore was negligent, "except in cases where the negligence is obvious to laymen." *Id.* (quoting *Kelley v. Trunk* 66 Cal.App.4th 519, 523 (1998)). For example, in *Massey v. Mercy Med. Ctr.*, a state appeals court applied the common knowledge exception where a nurse was tasked with assisting a fall-risk postoperative patient to walk a short distance to the bathroom. *Id.* at 697. The patient fell from a walker when he was left unattended and sustained serious injuries. *Id.* The court concluded that the common knowledge exception applied as the nurse was engaged in a routine, nontechnical task. *Id.* at 697.

"California courts have incorporated the expert evidence requirement into their standard for summary judgment in medical malpractice cases. When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence." *Hanson v. Grode*, 76 Cal.App.4th 601, 607(1999).

Plaintiff alleges that Corizon[4] breached its standard of care by denying him adequate medical care. Corizon has offered expert testimony that the treatment Plaintiff received met the standard of care. (ECF Nos. 94-2; 94-4). Plaintiff does not offer any conflicting expert testimony that the treatment he received fell below the standard of care. Instead, Plaintiff argues that lay witness testimony is sufficient to establish that Corizon breached its standard of care because the negligence was obvious to laymen. The Court, however, disagrees. Again, the lay witnesses improperly proffer opinions that require technical expertise. The witnesses testify as to what care

---

[4] Plaintiff also alleges in the operative complaint that the County Defendants were negligent. (ECF No. 1-1 at 6). In his opposition, however, Plaintiff requests to amend his claims against Boudreaux and the County. (ECF. No. 94 at 24). As discussed above, the Court declines to grant Plaintiff leave to amend.

Plaintiff should have received, including how many stitches were necessary to treat his wound.

The amount of stitches a wound requires is not a routine, nontechnical task that can be performed

or recognized as obvious by a layperson. Thus, the lay witness testimonies are, again,

inadmissible and insufficient to create a dispute of fact. Accordingly, Corizon has met its burden,

and is entitled to judgment as a matter of law.

**V.    CONCLUSION AND ORDER**

Based on the foregoing, Tulare County Correction and Sheriff Mike Boudreaux's motion

for summary judgment, (ECF No. 68), and Corizon Health Services' motion for summary

judgment, (ECF No. 85), is granted in its entirety.

The Clerk of the Court is directed to enter judgment in favor of Tulare County Correction

Center, Sheriff Mike Boudreaux, and Corizon Health Services, and to close the case.

IT IS SO ORDERED.

Dated:   **September 17, 2018**                    /s/ _Erica P. Grosjean_

UNITED STATES MAGISTRATE JUDGE